IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Harold Cook (M16795), | |
| Plaintiff, | |
| v. | Case No. 22 C 1579 |
| David Gomez, et al., | Hon. LaShonda A. Hunt |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Harold Cook brings this section 1983 action against Defendants David Gomez, Kenneth Osborn (collectively, the "Warden Defendants"), and Dr. Marlene Henze alleging failure to protect (Count I) and deliberate indifference to serious medical needs (Count II).[1] All defendants have moved to dismiss Plaintiff's complaint. For the reasons stated below, the Warden Defendants' motion to dismiss [40] and Dr. Henze's motion to dismiss [62] are denied.

## BACKGROUND

The following factual allegations are taken from the first amended complaint ("FAC") and treated as true for purposes of resolving these Rule 12(b)(6) motions. Plaintiff is an incarcerated individual currently in the custody of the Illinois Department of Corrections ("IDOC"). (FAC ¶ 1, Dkt. 15). At the time the FAC was filed, Plaintiff was incarcerated at Stateville Correctional Center ("Stateville"). (*Id.*) From at least January 10, 2018, until his transfer to Stateville in October 2019, Plaintiff was incarcerated at Menard Correctional Center ("Menard"). (*Id.* ¶¶ 1, 9). At all relevant times, Gomez and Osborn served as wardens at Stateville, and they were responsible for the custody, care, and safety of all inmates. (*Id.* ¶¶ 2, 3). Additionally, at all relevant times, Dr. Henze

---

[1] Danielle Tuccol was also named as a Defendant in this case. Because Plaintiff was unable to effectuate service upon Tuccol, those claims were dismissed without prejudice. (Dkt. 30).

1

was the medical director of Stateville, and she was responsible for providing medical care for all inmates. (*Id*. ¶ 4).

Plaintiff suffers from a medical condition known as priapism, which causes him to experience uncontrollable, prolonged, and painful erections. (*Id*. ¶ 10). As a result, Plaintiff has frequently presented to medical staff at Menard and Stateville for treatment, and he has also been sent to outside hospitals, including Southern Illinois Healthcare Memorial Hospital of Carbondale ("SIH Carbondale") while at Menard, and Amita Ascension Saint Joseph Joliet ("Amita Joliet") while at Stateville, for treatment. (*Id*. ¶ 12).

On or about January 10, 2018, Dr. Sam Stokes at SIH Carbondale informed Menard that Plaintiff required a higher level of care for his priapism and asked that the prison infirmary follow up with Dr. Nick Tadros, a urologist at Southern Illinois University Medicine ("SIU") in Springfield, Illinois. (*Id*. ¶ 14). Thereafter, on or about April 1, 2018, Dr. Tadros and Plaintiff elected to perform surgery, and Plaintiff had an inflatable penile prosthesis ("IPP") put in place. (*Id*. ¶ 15). The IPP is meant to prevent natural erections from occurring. (*Id*.)

In total, Plaintiff has had approximately twenty surgeries relating to the treatment of his priapism. (*Id*. ¶ 17). Despite these surgeries, Plaintiff has continued to experience painful natural erections lasting up to six hours. (*Id*. ¶ 18). Due to the seriousness and the sensitive nature of his condition, on or about October 23, 2018, Plaintiff was placed on "predator/vulnerable status" which requires Plaintiff to be single-celled. (*Id*. ¶ 19).

Plaintiff alleges that, in February of 2020, despite his "predator/vulnerable status" and single-cell order, he was placed in a cell with another inmate, Arnez McCorkle. (*Id*. ¶ 20). While being celled with McCorkle, Plaintiff continued to experience uncontrollable erections due to his priapism, which McCorkle became aware of. (*Id*. ¶ 21). As a result, on February 28, 2020,

McCorkle attacked Plaintiff with a sock filled with batteries while Plaintiff was asleep. (*Id*. ¶ 22). Plaintiff suffered a laceration to the face and extensive swelling. (*Id*. ¶ 23). Following this incident, Plaintiff filed multiple grievance reports with Stateville, which were subsequently dismissed. (*Id*. ¶ 24).

On or about May 24, 2021, Plaintiff experienced an uncontrollable erection accompanied by significant pain and blood in his semen. (*Id*. ¶ 27). Dr. Henze sent Plaintiff to Amita Joliet for treatment. (*Id*. ¶ 28). At Amita Joliet, Plaintiff was treated by Dr. Constance A. Marks. (*Id*. ¶ 29). Upon examination, Dr. Marks was unsure why Plaintiff had an IPP in place. (*Id*. ¶ 30). To treat Plaintiff's condition, Dr. Marks elected to administer an injection of phenylephrine (a medication that is typical used to treat nasal discomfort) into Plaintiff's penis. (*Id*. ¶ 31). While administering the injection, Dr. Marks punctured the tubes in Plaintiff's IPP and irrevocably damaged it. (*Id*. ¶ 32). As a result of the damage, on or around September 30, 2021, Plaintiff had to undergo an additional surgery with Dr. Tadros to replace his IPP. (*Id*. ¶ 35). Plaintiff filed various written grievances against Dr. Henze to seek appropriate care for his priapism, which were dismissed. (*Id*. ¶ 38).

Based on these incidents, Plaintiff filed this lawsuit against Defendants. Defendants' motions to dismiss are fully briefed and ripe for ruling.

## **LEGAL STANDARD**

Rule 12(b)(6) permits a party to move for dismissal based on the opposing party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under Rule 12(b)(6), courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). Applying these principles, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal*, 556 U.S. at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

Plaintiff alleges that he was beaten by another inmate after the Warden Defendants failed to comply with an order that required Plaintiff to be single celled due to his medical condition. Additionally, Plaintiff alleges that Dr. Henze sent Plaintiff to a hospital that was not equipped to meet his medical needs, despite her knowledge of the heightened level of care required for Plaintiff's condition. The Warden Defendants contend that they are not liable because they did not have knowledge of a specific threat to Plaintiff. Similarly, Dr. Henze contends that she is not liable because her decision did not depart from accepted medical practices and standards. Having considered the pleadings and the parties' arguments, the Court finds that Plaintiff has sufficiently stated a claim against all defendants.

I. **Failure to Protect**

"To state a failure to protect claim, a plaintiff-inmate must allege that (1) 'he is incarcerated under conditions posing a substantial risk of serious harm,' and (2) defendant-officials acted with 'deliberate indifference' to that risk. *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Only the second element—deliberate

4

indifference—is at issue. "Deliberate indifference requires that the corrections officer must have 'actual knowledge' of the risk." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (quoting *Guzman v. Sheahan*, 495 F.3d 852, 857-58 (7th Cir. 2007)). Here, the Warden Defendants argue that Plaintiff failed to allege that they had actual knowledge of any specific threat to Plaintiff before he was attacked. In response, Plaintiff argues that the Warden Defendants were aware of his "single cell status," and therefore, they knew that placing him in a cell with another inmate would expose him to harm. (Pl.'s Resp. to Warden Defs.' Mot. at 3, Dkt. 42).

The Warden Defendants rely on *Grieveson* in support of their position. In *Grieveson*, an inmate alleged that he was attacked several times and defendants were deliberately indifferent to his safety needs. 538 F.3d at 775. The court held that, for majority of the attacks, the inmate did not demonstrate a genuine issue of material fact about the officers' deliberate indifference. *Id*. at 778. Specifically, the court found that the inmate "never informed the jail officers of a specific threat to his life" – he did not tell the officers who assaulted him, why he had been assaulted, or whether he continued to feel threatened by the assaulting individuals. *Id*. at 776. And although, after one attack, the inmate informed the officers that he was afraid and he wanted to be moved to another cell block, the court found that "[s]uch vague information did not put the jail officers on notice of a specific threat to [the inmate's] safety." *Id*.

The Warden Defendants contend that *Grieveson* reinforces the Seventh Circuit's holding that prison officials must possess actual knowledge of a specific threat to incur liability under the Eighth Amendment. While the Seventh Circuit has "often found deliberate indifference where custodians know of threats to a *specific detainee* posed by a *specific source*," the Court is not "constrained by this fact pattern." *Brown*, 398 F.3d at 915 (emphasis in original). "[D]eliberate indifference can be predicated upon knowledge of a victim's particular vulnerability (though the

5

identity of the ultimate assailant not known in advance of attack)." *Id.*; *see also Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000) ("Sometimes the heightened risk of which the guards were aware comes about because of their knowledge of the victim's characteristics, not the assailant's.").

Here, Plaintiff alleged that the Warden Defendants had actual knowledge of his "predator/vulnerable and single cell status," (FAC ¶ 41), which the Court takes as true as it must at the pleading stage. In addition, Plaintiff alleged the Warden Defendants were deliberately indifferent to the risk of harm Plaintiff "face[d] from other inmates due to the sensitive nature of his priapism, and the way other inmates might react to the Plaintiff's uncontrollable erections." (FAC ¶ 42). Given the prison setting and Plaintiff's particular medical condition, it is certainly plausible that the Warden Defendants were deliberately indifferent in failing to ensure that Plaintiff remained single-celled. The Court therefore finds that these allegations are sufficient to allege that the Warden Defendants had knowledge of Plaintiff's vulnerability, which can form the basis of a deliberate indifference claim.

Accordingly, their motion to dismiss is denied.

## II. Deliberate Indifference to Serious Medical Need

For a prisoner to state a claim that defendant acted with deliberate indifference to a serious medical need, his complaint must be sufficient enough such that he will be able to demonstrate that: (1) he had a serious medical need and (2) the defendant acted with deliberate indifference to that need. *Adams v. Cook Cnty. Dep't of Corr.*, 485 F. Supp. 2d 940, 942 (N.D. Ill. 2007) (citing *Norfleet v. Webster,* 439 F.3d 392, 395 (7th Cir. 2006)). Again, only the second element—deliberate indifference—is at issue. To establish deliberate indifference, Plaintiff must prove that defendant "knew of a substantial risk of harm to the inmate and disregarded the risk." *Edwards v.*

6

*Snyder,* 478 F.3d 827, 831 (7th Cir. 2007). "Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." *Id*. "Still, a [plaintiff's] receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Id.*

Here, Plaintiff alleges that Dr. Henze "had actual knowledge of the heightened level of care necessary for [] Plaintiff's priapism, from which she could infer that a substantial risk of serious harm would exist if Plaintiff was sent to Amita Joliet for treatment." (FAC ¶ 48). Dr. Henze argues that Plaintiff was not entitled to demand specific care and that medical professionals may choose from a range of acceptable courses of treatment based on prevailing standards in the field. Thus, Defendant Henze contends that Plaintiff must allege that her treatment decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." (Henze's Mot. at 5, Dkt. 62) (quoting *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016)). Plaintiff, however, contends that he is not required to provide evidence or specific factual support for his allegations at this stage of the case. Instead, Plaintiff argues that all he is required to do is put Dr. Henze on notice and state a facially plausible claim. The Court agrees with Plaintiff and finds that he has alleged a plausible claim. *See Iqbal*, 556 U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"[I]t can be challenging to draw a line between an acceptable difference of opinion . . . and an action that reflects sub-minimal competence and crosses the threshold into deliberate indifference. One hint of such a departure is when a doctor refuses to take instructions from a

7

specialist." *Petties*, 836 F.3d at 729. Additionally, "[w]hile the cost of treatment is a factor in determining what constitutes adequate, minimum-level care, medical personnel cannot simply resort to an easier course of treatment that they know is ineffective." *Id.* at 730. Here, Plaintiff alleges that despite having knowledge that Plaintiff was under the care of a specialist and of the heightened level of care necessary for Plaintiff's priapism, Dr. Henze deliberately chose to send Plaintiff to Amita Joliet for treatment. Such allegations are sufficient to allege a plausible claim. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (Allegations of refusal to follow the advice of a specialist can state an Eighth Amendment claim.); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (finding that allegations that doctor refused to follow the advice of the specialists who were treating inmate could rise to the level of "deliberate indifference to serious medical needs").

Accordingly, Defendant Henze's motion to dismiss is denied.

## CONCLUSION

For the reasons stated above, the Warden Defendants' motion to dismiss [40] and Dr. Henze's motion to dismiss [62] are denied. Defendants must file an answer to Plaintiff's First Amended Complaint by 10/8/24.

**DATED:** September 17, 2024            **ENTERED:**

_____
LASHONDA A. HUNT
United States District Judge